*The final accounting in the Estate of* FREDERICK A. BIOLLEY.

UPON a final settlement, the Surrogate will not order payment of a legacy to a foreign guardian, even where the will provided that "money or property which might, under it, become vested in a minor, might be delivered to any foreign guardian;" there being a guardian appointed for the same infant by the Supreme Court of this State, payment was ordered made to him.

The treaty with Switzerland of 1850, does not require the reciprocal recognition of foreign guardians.

JOHN N. WHITING, *for New York Guardian.*
PHILIP J. JOACHIMSON, *for Swiss Guardian.*

THE SURROGATE.　The will of the testator, Frederick Augustus Biolley, a citizen of the Swiss Confederation, contains this devise and bequest:

"Thirdly.　Of all the rest, residue and remainder of my estate, real (should there be any) as well as personal, including all moneys or other things at my credit, and all which shall come to be at my credit on the books, or in the accounts of the present or either of the late firms of Benkard & Hutton, of the said city, and also including all property, rights of property, equitable interests and things in action, present or future, vested, contingent or possible, of whatsoever nature and wheresoever situated, I give, devise and bequeath four equal seventh parts (the whole into seven parts to be divided) unto," &c. * * *

"And the remaining one-seventh part of my said residuary estate to Fanny, daughter of my deceased sister, Adele Bouvier, residing at Neuchatel, aforesaid, in

·fee simple absolute, as and for her sole and separate estate, free from the contracts and control of any husband she now has or may hereafter have, and from liability for his debts; or, should my said niece fail to survive me, to her issue me surviving." 　　*　　*　　*

"Fifthly. My will is, that neither of my said executors shall be liable for any but his or her own receipt, default ·or neglect; nor, without gross negligence, for any loss by any banker, broker or agent; and that my money or ·other property, which, under this, my will, shall become ·vested in any minor, may be paid or delivered by my ·executors to any foreign as well as domestic guardian of ·such minor."

It appears that the share of the residuum coming, on this accounting, to Fanny Bouvier, will amount to about $8,000.

The legatee, Fanny Bouvier, is an infant, residing with her maternal aunt, Madame Georgette Lange, at Peseux, Canton of Neuchâtel, Switzerland. An extract from the records of guardianship and trusts of the Court of the ·Justice of the Peace for the district of Auvernier, in said Canton, is produced, translated and filed; by which it appears that Auguste Roulet, Notary, residing in Peseux, was, on application of Madame Lange, appointed guardian of Fanny Bouvier, by said Court, on the 6th of September, 1867; that he accepted and took the oath of office as such, in open Court, on the 15th of November, 1867; and that, by an order of that Court, on the 21st of August, 1868, the guardian was authorized to claim the legacy given under this will. Auguste Roulet, as guardian, has empowered Philip J. Joachimson, of New York, by power of attorney, duly executed, on the 19th of June, 1869, to accept the legacy of his ward, and give satisfaction therefor.

The consul-general of the Swiss Confederation, in this city, is understood to claim that article five of the treaty of November 25th, 1850, entered into between the

government of Switzerland and that of the United States, applies to this case of a foreign guardianship, and gives the guardian Roulet, appointed in Switzerland, " an absolute right to demand the payment of the money in question to him."

The fifth article of that treaty is in the following words:

" The citizens of each one of the contracting parties shall have power to dispose of their personal property within the jurisdiction of the other, by sale, testament, donation or in any other manner; and their heirs, whether by testament or *ab intestato*, or their successors, being citizens of either party, shall succeed to the said property or inherit it; and they may take possession thereof, either by themselves or by others acting for them; they may dispose of the same as they may think proper, paying no other charges than those to which the inhabitants of the country wherein the said property is situated shall be liable to pay in a similar case. In the absence of such heir, heirs or other successors, the same care shall be taken by the authorities for the preservation of the property that would have been taken for the preservation of the property of a native of the same country, until the lawful proprietor shall have time to take measures for possessing himself of the same.

" The foregoing provisions shall be applicable to real estate situated within the States of the American Union, or within the Cantons of the Swiss Confederation, in which foreigners shall be entitled to hold or inherit real estate."

It cannot be claimed that this treaty is contravened by a refusal to recognize a guardian appointed by a Court in Neuchatel; for a Surrogate in this State is not authorized under our statute, to recognize one appointed by a Court of New Jersey.

The statute of our State, relating to the payment of legacies to minors, is:

" Section 51, (46). In case any legatee is a minor, his

legacy, if under the value of fifty dollars, may be paid to his father, to the use and for the benefit of such minor.

"52, (47). If the legacy be of the value of fifty dollars, or more, the same may, under the direction of the Surrogate, be paid to the general guardian of a minor, who shall be required to give security to the minor, to be approved by the Surrogate, for the faithful application and accounting for such legacy."

There is nothing in the treaty that contravenes or abrogates this statute of our State; and I think that nothing is to be inferred from the treaty which is not plainly specified, where it would derogate from the sovereignty of the contracting powers. It does not in terms and cannot by inference, require a reciprocal recognition of foreign guardians. It cannot require the State of New York to recognize a Swiss guardian, while it does not recognize guardians appointed by the Courts in its sister States of the American Union.

But, it appears that Fanny Bouvier has a representative appointed under the laws of this State, who is entitled to receive her legacy. A certified copy of an order of the Supreme Court, made at a Special Term, on the 26th day of February, 1869, on application of the infant, who was over fourteen years of age, appointing John A. Morison, of the city of New York, as the general guardian of her estate, upon his giving bond, unto two sureties, in the sum of $16,000, is provided, filed with me; and, under this order, Mr. Morison claims to receive the legacy.

It still remains for the Surrogate to be assured that Mr. Morison has given such bond, and that it has been approved by a Justice of the Supreme Court, and filed in the office of its clerk. Upon being certified of these facts, I will approve of the security, as the statute requires, and the decree of distribution will order payment of the infant's legacy to her New York guardian, Mr. Morison. (*See* 4 *Brad. R.*, *p.* 334; 7 *Johns. Ch. R.*, *p.* 45; 26 *Howard's Pr. R.*, *p.* 402; 8 *Howard's Pr. R.*, *p.* 220.)